Good morning, Your Honor. May it please the Court. My name is Eugene Ramirez, and I'm here on appeal representing Deputy Kurt Messerschmidt and Sergeant Robert Lawrence. We're here to discuss an issue of whether qualified immunity applies in this matter, and particularly as it relates to Sergeant Lawrence, qualified immunity should apply. He was the sergeant for Deputy Messerschmidt. He reviewed the warrant that's in question, in particular the two paragraphs regarding seizure of firearms and gang paraphernalia. At the actual search of the Melinda residence, Sergeant Lawrence did not participate in the search. He was merely present. Why qualified immunity would not apply to Sergeant Lawrence becomes the question. As the supervisor reviewed the warrant, he did not see anything that struck him as being unconstitutional, overly broad, and then sent it on to his lieutenant, Lieutenant Ronellis, who also reviewed this warrant, and based on his training and experience, approved it. Kurt Messerschmidt, the other defendant in this matter, appellant, did what we encourage so many law enforcement officers to do, is to go seek further approval to determine whether that probable cause exists to search for the items being sought. And in this case, he went to a deputy district attorney, Janet Wilson, and asked her, based on her training and experience as an expert in criminal law, did he have sufficient probable cause to go seek further magistrate approval? Ms. Wilson signed off on the warrant, and then, at that point, Deputy Messerschmidt went to the magistrate judge and asked, please review this warrant and determine whether I have sufficient probable cause not only to search the home. Structurally, that's exactly what police should do, and we encourage it, and we want it, and it's an awfully good reason why they may not, might, shouldn't be sued most of the time when they go through all that. That doesn't quite get to the heart of this matter, which, as you know, is, why in the world are they seeking gang materials for a case that has nothing to do with gangs, and or, when they know precisely what the weapon he used to assault his girlfriend was, why in the world are they going to a third person's home and searching for any weapon, at least firearm, that might be in that home? That's really the core of it, and why did anybody think that was a cool thing to do? That's really where we're at, including the magistrate and the supervisors and whomever. I don't think they searched for these items just because they thought it was cool, Your Honor. I think based upon the circumstances presented to them, we have, I don't think anybody disputes that we had a violent, vicious crime occurring here with not only the shooting of this victim, but also the biting of her and hitting of her, and at that particular moment, it was just the sawed-off shotgun that was used. He's a nasty, bad man. Without a doubt. Also, as Detective Messerschmitt did his background check on Suspect Bowen, he realized he had a long history of violence, and indeed, based upon the record that we've provided to this court, you will see that he was several times arrested for being a felon in possession of a weapon, which here he was facing a third strike. I think it is more than conceivable and possibly plausible that this is not the only weapon that Mr. Bowen possesses. In fact, the warrant specified not just weapon, but firearms. Probably not. It probably is not the only firearm he possesses in the world. But if what you're going to be, what you're being charged with, and what you're going to be prosecuted for, is assaulting somebody with Firearm A, and we know precisely what Firearm A looks like, the question is, what is the evidentiary value and necessity of B through Z? I believe necessity is, he's a felon in violation of his conditions of parole. If he has any weapons, it doesn't matter what gun. I believe. But here's the thing. Obviously, if they knew what it looked like, let's say, I mean, there are a couple of things that could happen. You know, sometimes people may be, you know, maybe the officer would be out there and you can't tell whether it's the shotgun or whatever. They're out there looking. If they found a gun anyway, they would probably be able to take it. But to say that that's what you're going to look for, you know, that you're looking for the shotgun, if you found a gun and you ascertain that that was the place that he lived, then you know that he's a felon and you could probably take it anyway, just for no other reason than to ascertain could it legally be, you know, maintained by him. But the gang activity, too, otherwise if you open that up, now I understand you've got a gang cop and, you know, all of that. So, you know, any information that you can get on someone's gang involvement is going to, you're going to put it in the database and you're collecting intelligence. But you're searching for evidence of this crime. So that doesn't allow you to search for evidence of everything, you know. It doesn't allow you to search for whether he's in the Communist Party or whether he belongs to the ACLU or something like that. So, I mean, the stronger, we have to go through the Saussure analysis. Obviously, your stronger argument is on the second prong in terms of that he went through the process and a judge signed it. You know, a DA looked at it, a judge signed it. And we hope in that process that someone's going to say, you know, you need to close the loop here. You don't have, you know, you can't look for all firearms because you don't have it. Or if you do have it, you need to state it here. That loop wasn't closed. And so then we have to get to, you know, did the officer, you know, did he still think that he had, you know, did he have the right to go search and all of that. But we still in the Saussure analysis have to, in the first prong, say whether there was a constitutional violation. And so maybe there was. And then you prevail on the second prong. But you still got to tell us, you can't use search warrants to just go look for anything that you want to look for. You're supposed to look for evidence of the crime. You're absolutely right, Your Honor. In fact, law enforcement is encouraged to seek search warrants instead of relying on a consent or some exception to the search warrant. That's exactly what Detective Messerschmidt did. He went and obtained a search warrant. But more than just obtaining the search warrant, it went all the way up the chain of command. He was not trying to hide anything. He spent time with his sergeant, Sergeant Lawrence, his lieutenant, the deputy DA, and the judge. And once the DA and the judge reviewed this, they're the legal eagles. They're the ones that have the training and experience where Deputy Messerschmidt does not. But the standard is not, you know, we have the case Malloy, which says that the judge is signing the warrant, doesn't immunize the officer. So the standard is whether there's any indicia of probable cause for the items being searched for that are listed. And the question Judge Callahan is asking is, given that it has to be probable cause of evidence of a crime or the fruits or instrumentalities of a crime, how do we find that there was any indicia of probable cause to look for gang-related activity, given what was stated in the affidavit? Well, not only do we look at the affidavit, Your Honor, but I also think we have to look at the attachments to the affidavit that supported the probable cause of the search warrant. And in those attachments, Deputy Messerschmidt included the original crime report plus pictures that were given by Ms. Kelly to him. And in the police report, there was mention there made that not only was Mr. Bowen a member of the Mona Park Crips, he was also a member of a variety of motorcycle gangs. Right, but being in a gang is not itself a crime. Unless, of course, it's an element of his probation that he not associate with or be involved in a gang, which then would go to further criminal prosecution. That's why you do a probation search. That's not why you... I could think of reasons where, having been a prosecutor in the past, I could think of reasons where you could say something like, you know, that if the gang officer said, I'm familiar with, you know, gang activity, and one of the things when women break up with gangbangers is that, you know, I mean, he says, you know, I'm going to, if you leave me, bitch, I'm going to kill you, is that part of the culture of it is that they don't want to let anyone break up with them because then the girlfriends go and then they talk to the police and then they tell police about all the other murders that the gang's committing and all of that type of thing. So they could say things along, well, it's, you know, I know it's part of the gang culture and even though this may not be in furtherance of the, it doesn't appear to be in furtherance, but it is because letting people break up with gangbangers then opens up the, they have information that might be, you know, she has information that might be able to open up other crimes and all of that. And so, but there isn't any of that here. This is strictly looks to be a domestic violence situation. They don't tie it in any way as to how it affects the gang. So how to, you know, it still comes back to the same question. You know, maybe there was a way that you could do it, but how did you close the loop here? Imagine if we found the photographs of Mr. Bowen with Ms. Talley with the shotgun and other weapons being pointed at her. That would, and a tremendous amount of credits to her testimony at the subsequent criminal trial would also put him in possession of that weapon, that it was all part of the gang. So all of this could have been used to present the case to the district attorney's office to be used further to present it to the jurors resulting in the conviction of Mr. Bowen. But to say you're going to search for gang stuff, that you've got to have a reason to search for that, that if you hadn't put any of that in there and you went out to search for evidence of the crime, you were looking for the shotgun, and when they're looking for the shotgun in a place where they could have been looking for it, they find a picture of him with the shotgun or something, yeah, you could have taken that anyway. It would have been a plain view at that point. But we would also be accused of... You can't go rifling through, you know, are you in the Communist Party? Are you this or that type of thing without showing relevance. Which is why it was limited to just his gang affiliation with the Motor Park Crips and any other similar type gangs. But what did the Motor Park Crips have to do with this crime? Why aren't you putting that in there to just go on a fishing expedition to find out everything else that this guy's doing apart from this crime? I think they were looking for proof that he had this weapon, that he may have used it before and was involved in other illegal activities. It could have been documented, as is done, by members of gangs. Again, the standard is objective reasonableness, not perfection. It's objective reasonableness. What would another investigator have done and placed in the same or similar set of circumstances as Detective Messerschmidt? And certainly they would not have questioned the judgment of both the judge and a deputy DA who signed off on the probable cause. I would like to reserve at least four minutes here. Before you reserve the four minutes, it may not turn out to be four minutes. It may not. Quick question. You've mentioned his probation and or parole terms a couple of times. Is that part of the affidavit? It is not part of the affidavit. It was part of the record, however, in the deposition of Deputy Messerschmidt that he said he was on summary probation when he ran him coming up with this criminal record. I was just curious about whether it was part of the... It was not in the actual affidavit, Your Honor. Unless there are any other questions, Your Honor, I'd like to reserve the remaining three minutes and 38 seconds for my rebuttal. Thank you. Thank you. Good morning, Your Honor. Good morning. Sorry. Olu Orange on behalf of FLEs Millender and Johnson. I'd like to start by answering a question just posed, which was, what do Lamona Park Criffs have to do with this crime? And the answer is nothing, as admitted by Messerschmidt in his deposition, which then leads to the question, why wasn't there some indicia of gang-relatedness posed or included in the warrant affidavit here? The answer to that question is that he couldn't put it in there because he said himself that he didn't believe that the crime was gang-related. So to include it in there would basically be a falsity. Well, I guess that what I would ask you from the standpoint, you know, we asked some fairly rigorous questions on that, would be on the second prong of saussure in terms of this officer did everything that we want officers to do. You know, stated flat out in the affidavit, I want to look for gang stuff. I want to look for any guns that are in the house. You know, it's right there. He goes through the chain, gets it approved there, goes to a deputy DA. The deputy DA doesn't say, you know what, you need to put more in here or you need to somehow close this loop. Then goes to a judge. A judge signs the warrant. Why can't that officer rely on that? The answer to that question is a case that Judge Acuda mentioned a minute ago, which is Malley, which is quoted by Green Street versus County of San Bernardino. You only get to be immunized as an officer who's applying for a warrant who then seeks some type of review from a DA or from a magistrate if, indeed, reasonable minds could differ on the question as to whether or not the affidavit establishes probable cause. If there is nothing that says that in the affidavit that there's probable cause to move forward with this and no reasonable officer could believe that there is, then you don't get the benefit of the question of immunization. But it's not like he's not a gangbanger. It's not like he didn't have guns. It's not like you were putting that on someone that we're going after, Father Kelly, as it were. We're going to search Father who's not on probation, who's not a gangster, who's not any of those things. It's not like we're saying we want to search for Father Kelly's gangbanger activity. We want to search for his shotguns and his guns. This crime involved guns. This guy is a gangbanger. He's known to have all of those associations. They know that he's violent and all of that. So why isn't it reasonable for the officer to think under those circumstances that he could, and after a DA looks at it and a judge signs off on it, that he could look for those things? What the officer may have reasonably thought and what the officer put in the affidavit are two totally different things. What the DA and the judge actually have an opportunity to review is what the officer puts in the affidavit. And what the officer put in the affidavit in this case had nothing to do with his prior record, nothing to do with how or what the basis for this claim of gang affiliation or gang membership actually is. The other thing that the DA and the judge have the benefit of the knowledge of is 186.22B1, which is the California Penal Code section, part of the STEP Act, which says that it's not gang membership that's criminalized, it's gang activity for the benefit and not the direction of the gang. None of that was included in the affidavit. Well, and people that are supposed to know the law and went to law school, the DA and the judge, it's not obvious to them that that's defective without the warrant. So why do we then hold the officer to a higher standard who hasn't been to law school, who doesn't read that as far as that goes? Your Honor, we hold the officer liable or hold the officer to that standard because in the phase of the process where the determination is made as to whether to even submit it for approval or review, the officer is the person who looks at the affidavit, looks at the warrant that he's seeking and the language, and is called upon to make the decision as to whether or not it's appropriate to submit it. And in this case, any officer, any reasonable officer, would know that 186.22 would require more as far as the statement in the affidavit of what the basis for this gang relationship for this particular crime would happen to be. But if I don't know that... Is this to avoid the Eichmann defense? I'm sorry? Is this to avoid the Eichmann-type defense? Well, the authorities told me to do it, so I did it. I'm not familiar with the Eichmann-type of defense. I won't go into it. All right. Well, but I guess I'm thinking, like, if it isn't that obvious... I mean, I've seen a lot of search warrants in my day, and they always go look for all the guns in the house because sometimes people don't, you know, adequately describe... They think they know exactly what it looks like, and they don't. So, you know, I had to kind of roll up my sleeves and look at all of this, and if it wasn't that obvious to me, why should it be that obvious to the officers, particularly after it went through that whole chain and was signed off on? Well, Your Honor, I'll say this. Earlier it was said to someone who was arguing to stop bad-mouthing people. I'll give someone a compliment. The officer did an extraordinarily good job of figuring out exactly what the firearm looked like and what the firearm was in this case. It was a black, pistol-grip, sawed-off shotgun. That's a very particular weapon. So then to have a warrant based on the affidavit that says black, sawed-off, pistol-grip shotgun, to have a warrant that says any and all firearms is on its face overbroad. Well, do you agree with me that the officer probably could have, even if you found other guns there, probably could have picked those up too? If the warrants were drawn... You know, if he in fact lives there and this guy's a felon, he's on, you know, he can't associate with gang members, you can't have firearms at all, wouldn't the officer be remiss that you're looking for the shotgun and then you find some other guns there? I mean, you scoop them up, you check them, decide who they belong to, and then maybe they go back to the Melinders, or maybe they don't if it turns out that it's the felon's firearm. If that's set forth in the affidavit. No, I don't think it would have to be set forth. I mean, once you get in there, you can do things that are in plain view of other things. If they found dope, if they found a whole bunch of marijuana there, do they have to, if they had a right to be there, do they have to then say, oh, I don't have a warrant for this, so I'm going to leave, you know, I'm going to leave the millions of pounds of marijuana? No, Your Honor, but I think the key part of your question was if they have a right to be there. What we're talking about here is whether or not the search warrant that they secured gave them the right to look in the premises or on the premises for all of the things they said they were looking for in the warrant. So to answer your question, if indeed there was a connection that could be drawn between a weapon that they found while they were executing a valid warrant and Mr. Bowen had a no-weapons condition with probation or parole, then yes, they could take that weapon. But we're not deciding on this case whether they had the right to be here. We're deciding the qualified immunity, right? Absolutely. And the qualified immunity is we have to decide, you know, whether, you know, on those two provisions that you're stating are overbroad, was there a constitutional violation? And then the second problem, what would an officer have thought, you know, having a signed search warrant and all of that? Yes, and as far as the qualified immunity question, going back to whether or not, in light of the approval by the DA and the magistrate, the officer should have some type of immunity, absolutely not because the warrant on its face was overbroad based on what was stated in the affidavit as far as the description, the very fine description of the weapon versus how the warrant was drawn. Before it even gets to the approval stage, the officer should recognize the mismatch. As far as whether a reasonable officer would have known that, absolutely so. It's set forth. The case for that is U.S. v. Steynert. You're confined to the four corners of the affidavit. How black pistol grip sawed-off shotgun in the affidavit gets to any weapon or any firearm in the warrant is a case of clear overbreadth. All right, there's still other remaining parts of this case that in terms of there's not an appeal from the qualified immunity, the denial of qualified immunity on the entrance, right? And also the Monell issues remain pending, correct? They're not before us. They're not. As far as the entrance goes, it wasn't set forth in the statement of issues as far as what's on appeal. And as far as Monell goes, it's not before the court as I understand it. So it's before the court is qualified immunity on seizure of the gang material and the firearms provision. Are there any further questions from the court before I move forward? Don't hear me. Okay. All right. With no further questions, I would say this. I think that the best argument on behalf of appellants would be the Bridges argument, that essentially the warrant can be cured by the specificity of the affidavit if the affidavit is attached, when the warrant is executed. However, in this case, if it's limited by the specificity of the affidavit, then that means the search should have been limited to the black pistol grip sawed-off shotgun, which it wasn't. So in either case, you have a Fourth Amendment violation. Do you have a different, is there a different, do you analyze this differently with the officer, the other officer other than Messer Smith or Messer, the other officer? Lawrence? Yes. As far as generally, no, because he approved it. He was there for the execution of it. So under those circumstances. Well, now, if he's the one that has to go to for approval, let's assume that police know different things than lawyers and judges. And I think essentially you have to fall back on that argument if you're going to prevail. Because you're saying, I mean, the lawyer didn't catch what you're talking about, the judge didn't catch what you're talking about, but you're saying the police officer should have known that even though he had a signed warrant, that he couldn't go search, right? Yes. So then, just stay with me here for a second. I'm assuming the officer that approved it, let's assume that police officers were required to know things because, you know, they're on the street, they do certain, you know, they know, let's say they know, they should know things about probable cause that lawyers and judges shouldn't. And even if a judge signs it, they should know, I don't really have probable cause. What about the fact that he also went to, I'm assuming it was a higher ranking person that reviewed it and was tasked with catching, you know, reviewing reports and saying, you know what? You don't really have that here. You need to go back and do such and such. You need to add that. Doesn't that kind of help out Messerschmitt or no? No, because you don't get the benefit of that. You can't move beyond the facial invalidity of it unless it's a close question, unless reasonable minds could differ. And on the gun question, black pistol grip sawed-off shotgun, it's very specific. And you've got to tailor your warrant request to what's set forth in the affidavit. Well, I agree that it is, but the DA didn't catch it. The judge didn't catch it. So then we've got to go back to why should the officer have known that he didn't have probable cause? So then he went to a higher officer, and that officer didn't catch it either. So how, you know, if police officers are supposed to know something that DAs and judges don't know, if that's what defeats their qualified immunity, you hold them to, you know, a standard. You can't just, you know, even if a judge and a DA approve it, you just can't. You've got to do more. He went to a higher police officer, and that officer didn't catch it either. No, I'm not saying they're supposed to know anything that police officers don't know. And have the public defender give him a sign-off? No, all I'm saying is that before they go to anybody, it has to be a close question. And before there's that close question, or in the absence of that close question, the officer who makes the request is responsible. The courts have decided for some reason not to hold the judges responsible, and as far as the prosecutors. Thankfully. As far as he says they're reasonable. I'm not badmouthing anybody, but they've decided not to hold the judges responsible. And this is where the question must be posed with the officer who makes the request. That's just what the cases say. I would go with what the courts say on that. The question doesn't go further if facially it's invalid. And facially there's nothing here. Thank you for your argument. Your time's expired. Thank you. In case the court, the district court held that this warrant was facially valid. If it was so clearly overbroad, how come three law enforcement officers missed it, a deputy district attorney, and a judge all missed it? The district court did hold that it was, they did hold the warrant valid, but the district court did pick those two out and said that they were overbroad and denied. And wrote 91 pages, by the way. Not that volume solves everything, but, I mean, it was rather methodical. So help me out on this, that obviously the cases, I mean, generally it helps if you go to the DA and you get the judge to sign off. But we know that that's not the end of the inquiry. What, you know, in line with the cases that say that the officers got to look at it again and can't just completely rely on this, why is this one of those cases where, you know, tell me why it's different from the cases where the officers didn't get qualified immunity. Why is this one different? Why should the officers get qualified immunity here? If I may quote from the KRL decision, Your Honor, I think it will answer your question. When reasonable minds can differ as to the existence of probable cause, approval of a warrant by a government attorney and ratification by a neutral and detached magistrate usually establishes objectively reasonable reliance. Courts treat magistrates as more qualified than police officers to make determination on probable cause. And as a general matter, the Constitution does not require officers to second guess to legal assessments of trained lawyers. That's right on point, Your Honor. Except for the very introductory phrase, if reasonable minds could differ. And obviously reasonable minds are differing here, Your Honor, because we have one judge that says, this is great, I'm going to sign this warrant. We have another judge that says, well, you know, there's some issues here. If that were true, if that were true, then the sign-off by the magistrate would be a home-free pass always on the basis that a reasonable mind differed. I mean, truly, we don't quite come out and say it, but we admit that the DA might be unreasonable and the magistrate might be unreasonable and the police might be unreasonable. So what do you do with could reasonable minds differ on this? That's really the focus, isn't it? And that's when we go to the objective reasonableness test, Your Honor. We had, what would another officer do if placed in the same or similar circumstance? And we quote in the record, and have provided the excerpts of the record, the declaration of Mike Odle, LAPD SWAT officer for the past 27 years, who says that he would have done exactly the same thing. But the problem is, and where I have a problem, is that the courts say there has to be some indicia of probable cause. And regardless of how many people say there was probable cause, if you can't enunciate to us any indicia of probable cause that the gang-related materials, for example, was evidence of a crime that appears in the affidavit, then it really doesn't matter how many people signed off on it. Your Honor, if I may refer you to excerpt of record, page 124, and I quote from Messerschmidt in his probable cause in the affidavit. Your affidavit requests that this search warrant be endorsed for night service due to the fact that the investigation has shown that the primary suspect in this case has gang ties to the Mona Park Crip gang based on information provided to the victim in the Cal Gang database. Also, your affidavit believes the nature of the crime, assault with a deadly weapon, goes to show that night service would provide an added element of safety to the community as well as for the deputy personnel serving the warrant based on the element of surprise. They discussed the fact that the Mona Park Association may have implications for those serving the warrant, that he was going to be dangerous based upon his long history of violence and that they needed to prepare and to defend themselves. I think it was exactly mentioned in there, Your Honor. Unless there's further questions, your time is up. Thank you very much, Your Honor. Thank you both for your argument.
judges: Fernandez, Callahan, Ikuta